IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JUSTIN KEITH BRYANT | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv487 |
| SHERIFF, SMITH COUNTY | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Justin Keith Bryant, a former inmate of the Smith County Jail proceeding pro se, filed a petition for a writ of habeas corpus challenging the legality of the civil contempt order that caused his incarceration. The action was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. The matter is before the Court on Respondent's motion to dismiss (Dkt. #27), to which Petitioner has not responded.

Procedural History

This case arises from a civil domestic action in the 321st District Court in Smith County, Texas—*In the Interest of P.J.B a Child*, case No. 15-5125-D. On October 12, 2017, in that case the court found Petitioner to be in contempt for failure to pay child support and ordered him to serve 180 days in jail for each violation, with service of that sentence suspended so long as Petitioner satisfied several conditions including making his monthly child support payments. (Dkt. #10 at 2–13.) That suspension was revoked for noncompliance in an oral ruling on May 1, 2020, but the trial court again conditionally suspended the revocation and allowed Petitioner to remain free contingent on his "strictly abid[ing]" by certain terms, including timely paying his child support. (*Id.* at 13–15.)

On April 12, 2021, the trial court again found that Petitioner had failed to comply with the terms of suspension, revoked the suspension, and ordered him to serve 180 days. (*Id.* at 15–19.) However, the court ordered Petitioner released on April 30, 2021, in a document styled "Change in Status in Criminal Case," which ordered his conditional release and appearance at a compliance hearing and required Petitioner to "report to probation 24 hrs after release and abide by conditional of probation" [sic]. (*Id.* at 20.)

The case came before the trial court again on August 25, 2021. (*Id.* at 1.) Petitioner was present but refused to announce that he was ready to proceed "and orally declin[ed] to enter a 'formal appearance.'" (*Id.*) Petitioner also stated that he did not have or want an attorney, so the court appointed an attorney to serve as "stand-by counsel" for Petitioner, "to assist him as needed." (*Id.* at 2.) The court determined that Petitioner had failed to comply with its previous orders in numerous respects, including repeatedly failing to timely pay his required support payments. (*Id.* at 20–27.) The court revoked his release and ordered him to serve "the remainder of his 180 day sentence," meaning service of "161 days, day for day." (*Id.* at 28.) The trial court issued a "Writ of Commitment" for Petitioner's incarceration in the *P.J.B.* civil case (Dkt. #19-6), and also memorialized the ruling in a separate "Change in Status in Criminal Case," which listed the "offense charged" as "motion to revoke" and stated that "defendant [was] found guilty of: nonpayment of child supply." (Dkt. #19-2.) The case style on the "Change in Status" form was listed as "The State of Texas vs. Justin Bryant," with only Petitioner's name hand-written on the pre-printed form, and it bore the case number for the *P.J.B.* civil case.

On December 17, 2021, the Court received a habeas corpus petition about Petitioner's incarceration, which was filed pro se by his mother. (Dkt. #1 at 10.) The Court ordered Petitioner and/or his mother to show cause why the petition should not be dismissed for lack of jurisdiction because it

2

was not brought by Petitioner, and Petitioner's mother responded on his behalf. (Dkt. ##5, 9.) On January 26, 2022, the Court determined that Petitioner's mother did not qualify to proceed on Petitioner's behalf as next friend and gave Petitioner thirty days to file his own petition or have this case dismissed. (Dkt. #11.)

Petitioner first appeared pro se on February 16, 2022, when he filed a notice of change of address to a post office box and physical address outside of jail, along with a motion for extension of time to file his petition. (Dkt. ##15, 16.) After obtaining the requested extension, he filed the operative petition on March 16, 2022. (Dkt. #19.) The Court has severed extraneous civil rights claims about conditions in the Smith County Jail, and only Petitioner's habeas claims remain in this action. (Dkt. #22.)

## Petitioner's Claims

Petitioner complains that he was "placed in Smith County Jail on a civil matter" and that "no criminal case exists," which made him the victim of "unlawful detainment and non-conditional release on a civil matter." (Dkt. #19 at 1.) He refers to his incarceration as "kidnapping in a civil matter" and alleges that his due process rights under the Fourteenth Amendment were violated. (*Id.* at 2.)

Petitioner's specific grounds for relief are: (1) his due process rights were violated because a judge who had not reviewed the case file presided over the August 25, 2021 hearing and unlawfully detained him; (2) his rights were violated when the judge "forced counsel upon [him]" when counsel also had not reviewed the case file; (3) the judge "resurrected an unlawful 2017 order beyond the scope of jurisdiction or authority which said order is cruel and unusual" because it sentenced him to "beyond the maximum of 180 days in a civil matter"; and (4) the trial judge "created a fraudulent warrant two days after [he] had already been kidnapped from courtroom on August 25, 2021." (Dkt. #19 at 7–8.)

Petitioner seeks an investigation and "congressional review of this entire case" and "an order

3

to vacate ALL unlawful orders" against him. (*Id.* at 8, 11–12.)

## Respondent's Motion

Respondent filed a motion to dismiss (Dkt. #27), to which Petitioner has not responded, and it is ripe for review.

Respondent argues that the Court lacks jurisdiction over the petition because Petitioner was not in custody when he filed his own pro se petition. Specifically, he asserts that "Petitioner was booked into the Smith County jail to serve the remainder of his civil contempt on August 25, 2021," and that he was released on February 1, 2022 "after completing the contempt sentence imposed." (Dkt. #27 at 1.) He further asserts that "[n]o outstanding sanctions, other than those already imposed through the continuing child support obligation, hang over the Petitioner justifying a determination that the custody continues after release." (*Id.* at 3–4.) Accordingly, he argues that Petitioner did not satisfy the "in custody" requirement of 28 U.S.C. § 2241(c) when he filed his pro se petition on March 16, 2022. (*Id.* at 3.)

Respondent also argues that Petitioner's claims are subject to dismissal because he failed to exhaust his state remedies before seeking relief in this Court. (*Id.* at 4.) He asserts that exhaustion of claims in cases related to nonpayment of child support in Texas requires presenting them to Texas intermediate courts and the Texas Supreme Court, and he says public records confirm Petitioner's acknowledgment that he did not file any such challenges in state court in this case. (*Id.*)

## Discussion and Analysis

Federal courts have jurisdiction to entertain petitions for writs of habeas corpus only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Whether a petitioner is "in custody" is determined as of the date on which the habeas petition is filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In this case, that date is March 16,

2022, the date on which Petitioner first filed his pro se claims in this Court.

A petitioner is not "in custody" when he "suffers no present restraint" from the challenged conviction. *Maleng v. Cook*, 490 U.S. 488, 492 (1989); *Hendrix v. Lynaugh*, 888 F.2d 336, 338 (5th Cir. 1989). Federal courts generally presume that there are continuing collateral consequences flowing from a criminal conviction that persist even after a petitioner has been released from confinement or supervision. *Spencer*, 523 at 8. Accordingly, the Fifth Circuit has held that it is error to "fail[] to presume that there were continuing collateral consequences flowing from [a] *criminal* contempt conviction." *Carlisle v. Normand*, 745 F. App'x 223, 224 (5th Cir. 2018) (emphasis added); *United States v. Maldonado*, 735 F.2d 809, 812 (5th Cir. 1984) ("We have since applied this exception to allow review of fully served sentences, including cases involving criminal contempt convictions."). But Petitioner here does not challenge a criminal conviction. As his own petition insists, he was incarcerated "on a civil matter," for civil contempt, and "no criminal case exists." (Dkt. #19 at 1.) Despite the trial court's confusing use of a pre-printed criminal case form, it is clear that the orders that led to Petitioner's incarceration were in a civil case concerning support of his child and that they were all crafted to compel his compliance with his obligations rather than to punish him for a criminal offense.

Petitioner filed his petition on March 16, 2022, more than a month after he was released from jail on February 1, 2022, upon fully serving the contempt sentence. (*Id.*; Dkt. #27 at 59.) Petitioner's notice of address and his petition itself indicate that he was no longer incarcerated at the time of filing. (Dkt. #15; Dkt. #19 at 1 ("temporarily out").) And the Court takes judicial notice that Smith County's publicly available records confirm that Petitioner was booked into the jail on August 25, 2021, for non-payment of child support and released on February 1, 2022, on time served. *See* Jail Records Search Detail for Bryant, Justin Keith, https://judicial.smith-

5

county.com/PublicAccess/JailingDetail.aspx?JailingID=369851 (last visited Oct. 5, 2022). No ongoing consequences of the August 2021 order that Petitioner challenges are apparent in the record, and Petitioner has not identified any such consequences in response to Respondent's motion.

Accordingly, Petitioner was not in custody under that order at the time he filed his petition, which deprives the federal court of subject matter jurisdiction and requires dismissal of the petition. *See Pleasant v. State of Texas*, 134 F.3d 1256, 1258 (5th Cir. 1998) (court lacks subject matter jurisdiction where habeas petitioner was not in custody at the time the habeas petition was filed); *Richard v. Doe*, 638 F.App'x 409, 2016 U.S. App. LEXIS 4715, 2016 WL 1042347 (5th Cir. March 14, 2016).

Even if Petitioner were deemed to satisfy the "in custody" requirement, however, he failed to present his current claims to any state court for resolution before filing them here. A state prisoner must exhaust all remedies available in state court before proceeding on a habeas claim in federal court unless there is an absence of an available state corrective process or circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b); *Dickerson v. State of La.*, 816 F.2d 220, 225 (5th Cir. 1987) ("The exhaustion doctrine of section 2241(c)(3) was judicially crafted on federalism grounds in order to protect the state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdictions as well as to limit federal interference in the state adjudicatory process."). In order to exhaust properly, a petitioner must "fairly present" all of his claims to the state court. *Picard v. Connor*, 404 U.S. 270 (1981). Challenges to contempt orders in Texas must be brought in "an original habeas corpus proceeding in the Texas Supreme Court and intermediate courts of appeals." *Nixon v. 301st Jud. Dist. Ct.*, No. 3:06-CV-1787-G, 2007 WL 14282, at *2 (N.D. Tex. Jan. 3, 2007) (citing Tex. R. App. P. 52).

Petitioner acknowledges in his petition that he did not file any state-court challenges to his

incarceration. He implies that exhaustion should be excused in this case because he was "prevented from accessing any court by jail staff." (Dkt. #19 at 3.) But his specific allegation in support of that claim is that he "could not get in front of any court services staff." (*Id.* at 2.) He says he repeatedly asked to meet with a "court liaison/court services/support services" staff member identified as Ms. Edmonds and was denied. (Dkt. #19-1 at 7–8.) In inmate request forms attached to the petition, Petitioner asked on August 31, 2021, for "access to court services, the ability to work on [his] case, & access to a law library," and was told that he "should have access to the law library now. It was temporarily down." (Dkt. #19-9 at 1.) He repeatedly asked and filed grievances about the calculation of his sentence, and staff responses addressed that calculation. (*Id.* at 3–5; Dkt. #-9 at 7–8.) In a summary of his efforts, Petitioner lists denials of repeated requests to meet with Ms. Edmonds and for "court & notary services." (Dkt. #19-10 at 1–2.) In response to one of his grievances, Plaintiff was told that "[t]he Smith County Jail does not provide legal advice. Access to the court is available through correspondence or your attorney. If you are indigent, you may request correspondence material." (Dkt. #19-9 at 14.) In response to an inmate request form asking to meet with Ms. Edwards to "review [his] case," he was advised to "contact the courts or a lawyer." (*Id.* at 12.) In response to another request to "see Officer Edmonds for a writ of habeas corpus form," Petitioner was told the jail did not provide those forms. (*Id.* at 10.) But Petitioner does not claim that he ever attempted to contact any court, whether to request a form or file any motion or petition, and was prevented from doing so. A refusal to meet with Petitioner to discuss or advise him about his case is simply not the same as a refusal to allow him to file a claim with a court.

Petitioner has thus not established that he was prevented from exhausting his state remedies or that he has any other basis to be excused from the exhaustion requirement. Accordingly, his petition should be dismissed.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, the petitioner must make a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). To do this, he must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the prisoner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists reviewing this case could not disagree that Petitioner was not in custody when he filed his petition or that he filed his petition without first exhausting his state remedies. Accordingly, the Court should deny a certificate of appealability.

RECOMMENDATION

The undersigned accordingly recommends that Respondent's motion to dismiss (Dkt. #27) be granted, that Petitioner's petition for writ of habeas corpus be dismissed without prejudice, and that a

COA be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 6th day of October, 2022.

_K. Nicole Mitchell_
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE